[No. H023404. Sixth Dist. Oct. 31, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES EDWARD GLASPER, et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

[*]The written opinion which was filed on October 31, 2003, is certified for partial publication pursuant to California Rules of Court, rule 976(b). Parts to be published are the Introduction, Part I, Subpart K of Part II, and the Disposition.

[BLACK REDACTED BLOCK]

## Counsel

Bobbie Stein for Defendant and Appellant Troy Edward Morgan.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant Charles Edward Glasper.

Lyn A. Woodward, under Appointment by the Court of Appeal, for Defendant and Appellant Julie Ann Glasper.

Jeffrey M. Bryant for Plaintiff and Respondent.

## Opinion

**MIHARA, J.**—A jury found defendants Troy Edward Morgan, Charles Edward Glasper, and Julie Ann Glasper[1] guilty of transporting cocaine base (Health & Saf. Code, § 11352, subd. (a)]).[2] Defendants also had been charged with possession of cocaine base for sale (§ 11351.5); Troy was acquitted of this count, while Charles and Julie were found guilty of a lesser-included offense, possession of cocaine base (§ 11350). Troy and Julie were found

---

[1] We refer to the three defendants collectively as defendants. Since two defendants share the same last name, we shall refer to each defendant by first name. Charles and Julie also may be referred to as the couple or the Glaspers.

[2] All further statutory references are to the Health and Safety Code unless otherwise specified.

guilty of possessing drug paraphernalia (§ 11364), and Charles and Julie were found guilty of being under the influence of a controlled substance (§ 11550, subd. (a)). The jury found true an allegation that Charles was on bail when he committed the instant offenses (Pen. Code, § 12022.1)[3], and Charles admitted he had suffered a prior strike conviction (Pen. Code, §§ 667, subds. (b)–(i); 1170.12), he had a previous drug conviction (§§ 11370, subd. (c), 11370.2), and he had served a prior prison term (Pen. Code, § 667.5, subd. (b)). Julie also admitted having suffered a prior strike conviction. The trial court sentenced Charles to 11 years in state prison. It suspended imposition of sentence as to Troy and Julie and placed them on probation upon condition, inter alia, that they serve time in the county jail, Troy for 180 days, Julie for one year.

On appeal defendants contend they were deprived of a fair trial because the prosecution failed to produce plastic in which 14 rocks of cocaine base were wrapped and because the trial court failed to timely provide requested readback of testimony. Defendants contend their convictions for transportation must be reversed because: (1) the jury found the prosecutor did not prove intent to sell or otherwise distribute the cocaine; (2) the evidence was insufficient to establish transportation; and (3) their trial counsel provided ineffective assistance by failing to object to the prosecutor's misstatement of law regarding the elements of transportation. Charles and Julie contend the evidence was insufficient to establish possession of cocaine base and that they cannot be convicted of both possession and transportation since the crimes involved the same act. Julie and Troy contend the trial court abused its discretion by refusing to sentence them under Proposition 36. Charles and Julie contend they were deprived of their right to confront a key witness and to present a defense when the trial court quashed Charles's subpoena duces tecum directed at obtaining the arrest record of Troy's witness Furnare; Charles contends he was deprived of these same rights when the trial court refused to permit cross-examination of Officer Martin regarding Charles's full admission that he used crack cocaine earlier in the day. Julie contends the trial court abused its discretion in denying her motion to sever; alternatively, she argues that Furnare's testimony should have been excluded. Defendants argue that, assuming no single error was prejudicial, the cumulative prejudice arising from multiple errors mandates reversal of their convictions.

---

[3] Charles stipulated that, at the time of the charged offenses, he was on bail for a felony within the meaning of Penal Code section 12022.1.

## I. Facts

Between midnight and 1 a.m. on March 18, 2001, San Jose Police Officer Erik Martin was driving in his marked patrol car on Brokaw Road where a highway exit ramp intersects the street. A four-door Nissan on the ramp entered the intersection against the red light, and Martin braked to avoid a collision as it turned in front of him. Attempting to make a car stop, Martin pursued with emergency lights on as the Nissan traveled a few city blocks before "running" another red light. By this time, Martin had activated his siren. The Nissan crossed First Street, entered the driveway to a well-lit gas station, and parked next to a pump island. Martin parked behind and to the left. Using his spotlight, Martin saw that Charles was the Nissan's driver, Julie was the front passenger, and Troy sat behind Julie. Before he parked, Martin did not see anyone throw anything from the Nissan.

Within a few seconds of Martin parking, first Charles and then Julie left the Nissan and approached the patrol car. In response to this unusual behavior, Martin quickly left his car. When the three met between their cars, Martin observed signs that the Glaspers were under the influence of a controlled substance.[4] He also noticed that both showed physical signs of long-term cocaine base abuse. Charles told Martin he had been driving although his license was suspended, and Martin learned the Nissan was a rental leased to Julie's employer. As the three spoke, Troy remained in the Nissan. Martin did not see Troy make a throwing motion nor did he see Troy motion towards the driver's side of the car. However, he did not have Troy under continual observation while he dealt with the couple and Troy was only visible from his shoulders up.

Officer Hoag arrived while Martin spoke with the Glaspers. Either he or Martin got Troy out of the car. After running a warrants check on Troy, Hoag gave Troy permission to use the restroom at a nearby restaurant. When Troy approached the Nissan to get his personal bag from the back seat as Martin started his search in the front passenger area, Martin directed Troy to stand with Hoag. Troy did not exhibit symptoms of being under the influence of a stimulant or of long-term cocaine base use.

Martin found a one-inch piece of plastic with white residue on one side on the front floorboard where Julie's "feet would have been." In Martin's experience, this "lick bag" was consistent with a package for cocaine base,[5]

---

[4] Martin noted that Charles was "excited" and that his speech was "rapid," his pupils were "dilated," and his eyes were "bloodshot, watery." He noticed that Julie's eyes were bloodshot and watery, her pupils were dilated, and her arms were "twitching."

[5] Martin explained that, typically in San Jose, a round piece of plastic shopping bag is placed flat on one's hand, a rock of cocaine base is placed on the plastic, then the bag is pulled

and a rock of cocaine base (hereinafter rock) would have left a residue consistent with what was on the plastic. He said this flaking powder that had broken off a rock would not be present if the plastic had been left for any time, since it was clinging to the plastic with "static electricity and nothing more."[6] In a pouch attached to the back of Julie's seat, Martin found an unused glass tube and a scouring pad, materials that could be used to smoke cocaine base. On the rear passenger floorboard, Martin found a plastic wrapper containing a white chalky substance consistent with cocaine base. Martin said this plastic package with a knot tied in it was consistent with the plastic in the front of the car.

Martin next walked towards the driver's side door. At his feet, adjacent to the rear door on the driver's side, he found a small piece of black plastic that was "partially wrapped up into a bag, however it had opened." Inside that plastic were 14 small plastic baggies containing the same substance Martin had found in the car. The plastic was eight to 12 inches from the Nissan's left rear door, adjacent to the portion of the raised gas pump island, where a garbage can was located. Martin testified "if somebody reached out the back window and dropped something directly down[,] . . . that's where it would have landed." Martin thought only the rear window on the driver's side was open, although Hoag believed both front car doors were open.

As he entered the station, Martin could not see the area where the black plastic was found. He first saw that area when Charles exited the driver's door. He did not believe the plastic was on the ground when Charles approached the patrol car; because he was "concentrating" on Charles's hands such that, "had [Charles] dropped it as he was walking back, I definitely would have seen that." Martin added that the ground there was "basically gray concrete" and that he believed "the black plastic would have contrasted enough" to be visible.

The wrapping on each of the 14 rocks was consistent with the wrappings found inside the Nissan. They were the same size and had been cut in the same fashion "after the knot was tied, above the knot." The knots also were "very similar," and the rock on the rear floorboard was consistent in size with those found on the ground. Martin testified each of the 15 rocks was a usable quantity, one could obtain several inhalations from each one, and each had a street value of $20. Two of the rocks from the black plastic bag were found to contain cocaine base. Testimony was presented that laboratory protocol was to test 10 percent of a suspected controlled substance "if the items look the same and are from the same location."

tight and tied in a knot or, alternatively, the rock is placed in a corner of a ziplock bag, tied in a knot, and cut off to make a very small package.

[6] Martin testified that this residue was not tested.

Although he did not find pagers or other items associated with sales of narcotics from a residence, Martin believed the cocaine base was possessed for purpose of street sales, because a typical "crack" user would buy and use one rock at a time and because the small rocks were individually wrapped, similar in weight and size, and "packaged for sale" in a manner typical in San Jose.

After their arrest, Charles and Julie told Martin they had smoked cocaine base; Charles said he had smoked earlier that evening, Julie said she had done so earlier that day. Martin explained that, although the initial "euphoria high" lasts about 30 minutes, the effects of the stimulant continue for hours. Blood tests of both Charles and Julie confirmed the presence of cocaine and its metabolite.

While pat-searching Julie, Hoag found a unused devise that is used to smoke "crack" cocaine. Martin did not find large amounts of money on Charles's person. Troy admitted ownership of the pipe and pad in the pouch. Martin testified that Troy's story did not parallel that of the Glaspers, and that his "expensive" shoes, "demeanor," and "actions at the scene" were consistent with somebody "involved in dealing, as opposed to the Glaspers." Martin added that sellers of cocaine base did not often use the drug.

The owner of Castle Staffing of Silicon Valley testified Troy had worked as a beer vendor in the San Jose Arena on March 17, 2001, and had signed out at 10:30 p.m.

Danny Furnare testified he was in a county courthouse holding cell with several inmates, awaiting his arraignment, when he overhead an argument between Troy and Charles about their arrest for "dope that was on the ground[]" and who "was gonna take the rap." Furnare said he heard Charles said the dope was his, although Furnare earlier had told Troy's investigator that the taller of the two admitted possessing the drugs, and Martin testified Troy is taller and substantially heavier than Charles. The trial court took judicial notice that the arraignments for Troy and Charles occurred on April 23, 2001.[7] Furnare testified that, after the holding cell incident, he and Troy often spoke in their dormitory. He added that Troy had asked his name and telephone number prior to his release on bail.

---

[7] The court then explained to the jury that the date of the arraignment of the male defendants was "conclusively proved."

## II. Discussion

### A.–J.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### K. Exclusion of Troy and Julie from Diversion Provisions of Proposition 36.

Julie and Troy contend the trial court abused its discretion by finding them ineligible for "treatment" under the provisions of Proposition 36, the Substance Abuse and Crime Prevention Act of 2000, Pen. Code, §§ 1210, 1210.1 (sections 1210 and 1210.1).[19] They claim the jury's decision to acquit them of possession for sale and to find them guilty of the lesser included offense of possession precluded the trial court from making a factual determination that there was evidence the cocaine base found outside the Nissan was possessed *for purposes other than personal use.* They also claim the trial court erred by excluding them from Proposition 36 treatment since the prosecutor failed to specifically allege the transportation was not for personal use and the jury made no such finding while rendering verdicts consistent with a conclusion of transportation for personal use.

In relevant part, section 1210 provides that, "[a]s used in Sections 1210.1 and 3063.1 of [the Penal] code, and Division 10.8 (commencing with Section 11999.4) of the Health and Safety Code: [¶] (a) The term *"nonviolent drug possession offense"* means the *unlawful* possession, use, or *transportation for personal use* of any controlled substance identified in Section 11054 [through] 11058 of the Health and Safety Code, or the offense of being under the influence of a controlled substance in violation of Section 11550 of the Health and Safety Code. The term *"nonviolent drug possession offense"* does *not include the possession for sale,* production, or manufacturing of any controlled substance . . . ." (Italics added.)

In relevant part, section 1210.1 provides that "(a) [n]otwithstanding any other provision of law, and except as provided in subdivision (b), any person *convicted of a nonviolent drug possession offense* shall receive probation. As a condition of probation the court shall require participation in and completion of an appropriate drug treatment program. . . . A court may not impose incarceration as an additional condition of probation. . . . [¶] (b) Subdivision

---

*See footnote, *ante,* p. 1104.

[19] Charles joined in Julie and Troy's Proposition 36 arguments. However, as he conceded in not seeking Proposition 36 diversion at sentencing, Charles was statutorily ineligible for diversion under Proposition 36. (§ 1210.1, subd. (b)(1); see e.g., *People v. Superior Court (Henkel)* (2002) 98 Cal.App.4th 78, 82–83 [119 Cal.Rptr.2d 465] *(Henkel).*)

(a) does not apply to . . . : [¶] (1) Any defendant who previously has been convicted of one or more serious or violent felonies in violation of subdivision (c) of Section 667.5 or Section 1192.7, unless the nonviolent drug possession offense occurred after a period of five years in which the defendant remained free of both prison custody and the commission of an offense that results in (A) a felony conviction other than a nonviolent drug possession offense . . . ."

At the sentencing hearings in question, the trial court determined *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*) was inapplicable since the statutorily imposed maximum punishment was not increased.

Troy then argued the verdicts indicated he had been convicted of transportation on a "vicarious" liability theory, and that, since the Glaspers were convicted of simple possession, he only was vicariously liable for the transportation of the cocaine base for the Glaspers' personal use. Julie argued that, in contrast to Troy's situation, the jury specifically made a "finding" that she had not possessed cocaine for anything other than "straight" possession in light of its acquittal of the greater offense of possession for sale and verdict of guilty as to "simple" possession. She argued the "finding" applied to the transportation count and that the jury thus specifically found she transported the cocaine base for personal use. The trial court indicated that, in its experience, given the instant facts, the 14 rocks were "not possessed for simple possession" but for sale. After considering the trial testimony and noting that the jury verdicts were not necessarily inconsistent, the court found both Troy and Julie ineligible to participate in the Proposition 36 program. For the reasons stated below, we conclude the trial court properly rejected the defense argument that the Proposition 36 created a new *crime* of transportation for personal use and thus contemplated a jury finding regarding a defendant's eligibility for such diversion in a transportation case. We similarly conclude the trial court correctly determined that it had "the inherent authority" to consider the trial testimony in determining a defendant's eligibility for Proposition 36.

"The declared purpose of Proposition 36 is to 'divert from incarceration into community-based substance abuse treatment programs nonviolent defendants, probationers and parolees *charged with simple drug possession or drug use offenses.*' [Citations.]" (*People v. Superior Court (Turner)* (2002) 97 Cal.App.4th 1222, 1226 [119 Cal.Rptr.2d 170].)

In interpreting the "washout" provisions of section 1210.1, subdivision (b)(1), the court in *Henkel* reviewed the relevant voters' materials to ascertain the Electorate's intent in enacting Proposition 36. (*Henkel, supra,* 98

Cal.App.4th at pp. 82–84 & fn. 3.)[20] As relevant the *Henkel* court noted that the ballot argument in favor of Proposition 36 indicates "the initiative was intended to exclude any defendant who was more than a 'simple,' 'nonviolent' drug offender: 'Proposition 36 . . . only affects those guilty of simple drug possession.' " (98 Cal.App.4th at p. 83.)

■ Proposition 36 should not be interpreted to frustrate the intent of the electorate. (*People v. Delong* (2001) 93 Cal.App.4th 562, 569 [113 Cal.Rptr.2d 385].) Its words " 'should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the . . . voters . . . . [Citations.] [¶] But the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' [Citation.]" (*People v. Barasa* (2002) 103 Cal.App.4th 287, 291–292 [126 Cal.Rptr.2d 628] (*Barasa*).)

Here, we are convinced the intent of the electorate to strictly limit the use of Proposition 36 to those involved in simple drug possession for personal use would be frustrated were we to accept the argument that a defendant must be given Proposition 36 diversion unless the prosecution pleads and the jury finds that the felony of transportation was for something other than personal use.

■ One can be convicted of transportation even if acquitted of possession for sale, or even simple possession. (*People v. Emmal* (1998) 68 Cal.App.4th 1313 at p.1317 [80 Cal.Rptr.2d 90].) The trial court's determination that Julie and Troy were involved in more than simple possession for their own personal use was based on the 14 rocks of base cocaine found *outside* the car. The jury properly could have found the Glaspers guilty of simple possession based solely upon their symptoms, their admissions, their blood content and the lick bag.

---

[20] Pursuant to California Rules of Court, rule 41.5, we take judicial notice of that portion of the 2000 general election voters' pamphlet dealing with Proposition 36.

■ For the reasons stated in *Barasa*, we are not persuaded by the claim that Proposition 36 created a new crime of transportation for personal use or that it created a sentencing enhancement that required the jury, under *Apprendi*, to make a finding beyond a reasonable doubt that the controlled substance was not possessed for personal use before a court can preclude a convicted defendant from the ameliorating provisions of section 1210.1.[21] We agree with the *Barasa* court that *Apprendi* does not apply here because "the issue concerns a sentencing provision which lightens, rather than increases, punishment for crime. Because Penal Code section 1210.1 effects a sentencing *reduction*, rather than an *increase* in the 'prescribed statutory maximum' sentence, the analysis of a related sentencing provision which also provides for a possible mitigation of punishment, rather than an increase in the prescribed statutory maximum punishment, is applicable." (*Barasa, supra,* 103 Cal.App.4th at p. 294.)

■ We adopt the following reasoning in *Barasa* as our own: "[W]e . . . look only to determine whether the statutory language which applies to this case places the burden of proof as to whether or not an amount transported was for 'personal use' on the prosecution . . . or upon the defendant . . . . [¶] Under the standard of review we have cited, we must read the language of the enactment in context, and the context, a clearly stated requirement that probation be granted in personal use amount cases, demonstrates no more than this: in personal use amount cases, a prosecutor may not avoid the application of Proposition 36 simply by charging the offense as a transportation rather than as a possession. Thus, read in context, the 'transportation' offense is not divided into degrees by Proposition 36; rather, where the transportation is of an amount for personal use, probation may be available to a defendant who can show that he comes within this exception. [¶] Thus, where transportation is alleged and proven, the central and dispositive question is whether [the defendant] or the People had the burden on the question of whether the drugs he transported were for personal use. [Julie and Troy] argue[] the People must prove the negative; that is, the drugs transported were transported for commercial rather than personal usage. We disagree, as the law is clearly settled to the contrary: 'As provided by Evidence Code section 500: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." Once this initial burden is met, the opposing party will be charged with producing its

---

[21] With regard to the argument that, in order to preclude eligibility for Proposition 36 diversion under a transportation conviction, *the prosecutor must allege,* and the jury must find that the transportation was for other than personal use, we note that defendants were possibly eligible for Proposition 36 diversion only because *sentencing occurred after the effective date of the proposition.* (See, e.g. *People v. DeLong* (2001) 93 Cal.App.4th at pp. 564, 570.) The complaint in this case was filed in March 2001, and the information was filed the following month.

own evidence as to the matters established. "(a) The burden of producing evidence as to a particular fact is on the party against whom a finding on that fact would be required in the absence of further evidence. [¶] (b) The burden of producing evidence as to a particular fact is initially on the party with the burden of proof as to that fact." [Citation.] " 'Burden of producing evidence' means the obligation of a party to introduce evidence sufficient to avoid a ruling against him on the issue." (Evid. Code, § 110.) Thus, if a plaintiff presents evidence to establish each element of its case, the defendant has the burden of going forward with its own evidence as to those issues. This does not alter the ultimate burden of proof, which rests with the plaintiff to prove each of the relevant facts supporting its cause of action.' [Citation.]" (*Barasa, supra,* 103 Cal.App.4th at pp. 295–296, fn. omitted.)

We agree with the People that it appears illogical to suggest, in light of the judicial construction of previous legislatively enacted diversion statutes (§ 1000 et seq. [drug diversion]), that, in the absence of some explicit or implicit indication, the electorate intended the trial court to lose its traditional judicial power to determine whether a defendant is eligible for a diversion-type program. (See, e.g., *People v. Williamson* (1982) 137 Cal.App.3d 419, 421–423 [187 Cal.Rptr. 107].) In that regard, we note that "[p]rinciples of interpretation caution against reading a statute so as to achieve absurd results, or results inconsistent with the apparent legislative intent. [Citation.]" (*Estate of Peterson* (1999) 72 Cal.App.4th 431, 437 [85 Cal.Rptr.2d 110].)

 In summary, we conclude the trial court properly denied the motions for diversion under Proposition 36.

### III. Disposition

The judgment as to Julie Glasper and Troy Edward Morgan is affirmed.

The judgment as to Charles Edward Glasper is reversed, and the matter is remanded to the trial court for the limited purpose of having the trial court conduct an in camera hearing on Charles Glasper's request for discovery of the information in witness Furnare's booking records from March 16, 2001, to March 30, 2001, regarding whether Furnare was in custody on the date of the arraignment for Charles Glasper and Troy Morgan. If the court finds no discoverable information, it shall reinstate its original judgment. If the court finds relevant discoverable information in Furnare's booking records, Charles shall be given the opportunity to demonstrate that this information would have led to relevant, admissible evidence that he could have presented at trial and that he was prejudiced at trial by the absence of this evidence. If the trial

court determines that Charles was prejudiced by the absence of this evidence, it shall order a new trial for him. If it determines that Charles was not prejudiced, it shall reinstate its original judgment.

Bamattre-Manoukian, Acting P. J., and Wunderlich, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 18, 2004.