Filed 11/20/14  P. v. Whigham CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL DEAN WHIGHAM,<br><br>        Defendant and Defendant. | A139920<br><br>(Contra Costa  County<br>Super. Ct. No. 51310440) |

Defendant Michael Dean Whigham was pulled over in a truck he was driving.  A search revealed cocaine base and over $500 in cash.  A jury convicted him of transporting cocaine base (Health & Saf. Code,[1] § 11352, subd. (a)) and possessing cocaine base (§ 11350, subd. (a).)  Defendant appeals, contending his section 11352 conviction cannot stand because the jury was not instructed that the requisite transportation was for sale and not for personal use, an element that came into being after the jury found defendant guilty of this crime.  The Attorney General concedes the amendment to section 11352 must be applied retroactively, but maintains that inasmuch as "the evidence overwhelmingly established that [defendant] sold drugs," any error was harmless beyond a reasonable doubt.  Having conducted a thorough examination of the record, we cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the omitted element.  Accordingly, we shall reverse the conviction on the transportation count and remand for retrial.

---

[1]     All further undesignated statutory references are to the Health and Safety Code.

1

## I. BACKGROUND

### A.    *Statement of Facts*

On October 12, 2012, at about 6:30 p.m., Contra Costa Sheriff Deputy Travis Wrangham was conducting surveillance at a Shell gas station in Bay Point that was a known location for drug activity. Wrangham was dressed in plain clothes and conducted surveillance from a parked, unmarked minivan with blacked out windows. A Mitsubishi sedan was parked two stalls away from him. A light blue Ford pickup truck driven by defendant arrived and parked in the space between Wrangham's van and the Mitsubishi.

The driver of the Mitsubishi, later identified as Mr. Gross, got out of his car and walked up to defendant's truck. Gross and defendant had a quick conversation. Gross reached into the cab of the truck with money in his hand. A few seconds later, Gross reached into the truck a second time. When Gross removed his hand from the truck it was in a closed fist, as if he was holding something. Wrangham believed that he had just witnessed a drug transaction. Gross returned to his car and promptly left the gas station. Defendant also left the gas station. As Wrangham was undercover, he did not contact either defendant or Gross.

Wrangham saw defendant's pickup truck again later that same evening. At approximately 9:30 p.m., Wrangham notified Contra Costa Sheriff's Deputy Anthony Coniglio that the truck had been involved in an earlier drug transaction and it was possibly on its way to another drug transaction.

Coniglio saw defendant run a stop sign. He pulled up behind defendant and activated his emergency lights. It took defendant over a minute to pull over. As he drove, defendant was arching his back and lifting up his legs from the seat. Coniglio thought defendant was concealing or retrieving something in his pants. When defendant finally pulled over, Coniglio got out of his patrol car and walked up to defendant's truck. Defendant was banging on the steering wheel and seats, and swearing loudly. Coniglio asked him to calm down, and he did.

Coniglio asked defendant to get out of the truck and asked for permission to search him and/or the truck for anything illegal. Defendant said, " ' Sure, man, go ahead' " and

2

then added, " 'I just need a break. . . . Can you give me a break?' " Coniglio searched defendant and found a roll of money, approximately $500, in his left sock, and another $55 in his right front pocket. Coniglio noticed that defendant had been keeping his right leg bent, making it difficult to conduct the search. When Coniglio asked him to straighten out the pant leg, a clear plastic baggie fell out. The plastic baggie contained two smaller baggies. Each of the two smaller baggies contained a pea-size, chunky, off-white substance later identified as cocaine base, also known as rock cocaine. The total estimated weight of the cocaine base in the two baggies was 0.48 grams. Coniglio opined that the street value of the recovered cocaine base was between $30 and $50, and that it was enough for about four doses.

Based on Coniglio's own observations, and what Wrangham had told him about what he had seen at the Shell gas station, Coniglio opined that defendant had possessed the cocaine base for the purpose of sale.[2] According to Coniglio, someone who only uses cocaine base does not have several separately packaged quantities of cocaine base on their person at the same time. He further explained that the amount of money found in defendant's sock was significant because "when you have a lot of product you don't have a lot of money, and when you don't have a lot of product you have a lot of money." In Coniglio's opinion, defendant's possession of only two baggies of cocaine base and a lot of money showed that he possessed the cocaine base for sale. Coniglio also noted that drug dealers often had money spread out on their person to avoid theft.

## B.    *Procedural History*

On May 29, 2013, the district attorney filed an information charging defendant with selling or transporting cocaine base (§ 11352, subd. (a)—count 1) and possession of cocaine base (§ 11350, subd. (a)—count 2). As to count 1, the information further alleged that defendant had sustained four prior narcotics convictions (§ 11370.2, subd. (a)). The information also alleged that defendant had sustained three prison priors (Pen. Code, § 667.5, subd. (b)).

---

[2]     The trial court qualified Coniglio as an expert on possession for sale of cocaine base.

3

On July 31, 2013, a jury convicted defendant of both counts.  The trial court found three of the four prior narcotics convictions and all three prison priors true.

On September 11, 2013, the trial court sentenced defendant to a split sentence of four years in county jail followed by two years of mandatory supervision.  Defendant filed a timely notice of appeal the same day.

## II. DISCUSSION

At the time of defendant's transportation conviction, section 11352, subdivision (a) provided that "every person who transports . . . any controlled substance . . . shall be punished by imprisonment . . . for three, four, or five years."  Case law construed the statute to cover any transportation of a controlled substance with knowledge of its presence and illegal character, regardless of whether the defendant intended to sell the drug.  (*People v. Glasper* (2003) 113 Cal.App.4th 1104, 1113; *People v. Cortez* (1985) 166 Cal.App.3d 994, 997-998; see also *People v. Emmal* (1998) 68 Cal.App.4th 1313, 1317-1318 [interpreting analogous provision in § 11379]; *People v. Eastman* (1993) 13 Cal.App.4th 668, 676-677, 676, fn. 8 [same].)  After defendant's conviction, section 11352 was amended, (Stats.2013, ch. 504, § 1, eff. Jan. 1, 2014), to add subdivision (c),[3] which provides:  "For purposes of this section, 'transports' means to transport for sale." (See also amended § 11379, subd. (c) (Stats.2013, ch. 504, § 2) adding identical language.)

---

[3]     Section 11352 now reads: "(a) Except as otherwise provided in this division, every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport . . . any controlled substance [in specified statutes] which is a narcotic drug . . . shall be punished by imprisonment . . . for three, four, or five years. [¶]  (b) Notwithstanding the penalty provisions of subdivision (a), any person who transports any controlled substances specified in subdivision (a) within this state from one county to another noncontiguous county shall be punished by imprisonment . . . for three, six, or nine years.  [¶]  (c) For purposes of this section, 'transports' means to transport for sale.  [¶]  (d) This section does not preclude or limit the prosecution of an individual for aiding and abetting the commission of, or conspiring to commit, any act prohibited by this section."

Defendant contends his conviction for transportation must be reversed because the jury was permitted to convict on this charge even if it believed that the narcotics were possessed for personal use.

"When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*In re Estrada* (1965) 63 Cal.2d 740, 745.)

The parties agree that under *Estrada* the amendment to section 11352 applies to this case, and so do we. The parties, however, disagree about the effect of the amended statute on the instant case. Defendant argues his transportation conviction must be reversed and remanded for a new trial on the transportation element, while the Attorney General argues the matter should be affirmed under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) because any error was harmless beyond a reasonable doubt, in light of the "overwhelming evidence" that defendant sold drugs.

Defendant's theory of prejudice rests on the possibility that the jury might have convicted him of transportation even if it determined his possession of cocaine base was for personal use. Defendant does not apply the *Chapman* standard but relies instead on *People v. Guiton* (1993) 4 Cal.4th 1116 (*Guiton*) to support his theory of prejudice. Defendant cites *Guiton* for the proposition that " 'if a jury is presented with multiple theories supporting conviction on a single charge and on review one theory is found' legally defective, that is, the theory does not present a legally sufficient basis for conviction, reversal is required unless substantial reasons exist to find that the verdict was based on a legally valid theory. . . . (*People v. Llamas* (1997) 51 Cal.App.4th 1729, 1740.)" In *Guiton,* however, the California Supreme Court observed that it was "not then

5

presented with the situation of a jury's having been instructed with a legally adequate and a legally inadequate theory and that [it] therefore 'need not decide the exact standard of review' in such circumstances." (*People v. Cross* (2008) 45 Cal.4th 58, 70 (concur. opn. of Baxter, J. [noting that issue *Guiton* was not dispositive on alternate-theory error as *Cross* "only now presents that issue"].)

To the extent defendant asserts that the *Chapman* harmless-error standard does not apply in the instant case, he is plainly mistaken, as the United States Supreme Court made clear in *Hedgpeth v. Pulido* (2008) 555 U.S. 57, that "drawing a distinction between alternate-theory error and . . . instructional errors . . . would be 'patently illogical,' given that such a distinction ' "reduces to the strange claim that, because the jury . . . received both a 'good' charge and a 'bad' charge on the issue, the error was somehow more pernicious than . . . where the only charge on the critical issue was a mistaken one." ' [Citations.]" (*Id.* at p. 61, italics omitted.)

Here, the amendment to section 11352 requiring that transportation be for sale added an element to that crime that did not exist at the time the jury decided this case. As the new element applies retroactively, the jury's conviction of defendant without being instructed on the new element is equivalent to situations where defendants were convicted using instructions that omitted an element of the offense. As the high court explained in *Neder v. United States* (1999) 527 U.S. 1, 15 (*Neder*), the *Chapman* standard applies where a jury instruction erroneously omits an element of an offense. Under the *Chapman* standard, reviewing courts consider "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*Ibid.*) "*Neder* analyzed instructional errors that arguably prevent the jury from finding an element of an offense to the erroneous admission or exclusion of evidence. [Citation.] In such cases, 'the harmless-error inquiry must be essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?' " (*People v. Gonzalez* (2014) 60 Ca1.4th 533, 663.) "[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the

6

same absent the error, the erroneous instruction is properly found to be harmless." (*Neder, supra,* 527 U.S. at p. 17.)

Thus, in analyzing whether an error was harmless, "*Neder* instructs us to 'conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless.' [Citation.] On the other hand, instructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.' [Citations.]" (*People v. Mil* (2012) 53 Cal.4th 400, 417.) Our task, then, "is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' [Citations.]" (*Ibid.*)

Having conducted a thorough examination of the record, we cannot say that the omitted element of transportation for sale was harmless beyond a reasonable doubt. Although the evidence of intent to sell here is sufficient to support a jury's finding that defendant transported the cocaine base for purposes of sale, it is not, contrary to the Attorney General's assertion, overwhelming and the jury could have had a reasonable doubt on the matter. Based on the location of the transaction, and Wrangham's experience, it was likely that a drug transaction could have occurred. Despite this likelihood, there was also plenty of room for doubt in that the only evidence of a drug transaction having taken place was Wrangham's speculation.

Wrangham's testimony that he *believed* he saw defendant engage in a hand-to-hand drug transaction does not show *beyond a reasonable doubt* that defendant transported drugs to the Shell station for purposes of sale. Wrangham described seeing Gross, who had cash in his hand, put his hand inside defendant's truck, and then take his hand out with closed fist. Wrangham, who was undercover at the time, did not approach either defendant or Gross at the Shell station to verify the nature of the transaction. Also,

7

there is no evidence that Gross, upon leaving the gas station, was ever stopped or searched.

Nor does the evidence of defendant's subsequent traffic stop establish that he transported the cocaine base for purposes of sale. On recross-examination, Coniglio testified that defendant's failure to immediately pull over and his anger at being pulled over were indicative that defendant had "something illegal" in his possession. Accordingly, although defendant's demeanor suggested his consciousness of guilt of *something* illegal, this evidence is as consistent with transportation for personal use as it is with transportation for sale.

The remaining evidence is likewise insufficient to establish beyond a reasonable doubt that defendant transported the cocaine base for sale. Specifically, the amount of cocaine base and its packaging, though indicative of an intent to sell, was also consistent with personal use. On cross-examination, Coniglio testified that the amount of cocaine base found on defendant was enough for approximately four doses and worth between $30 and $50. Coniglio opined that the manner in which defendant kept money hidden on his person was consistent with the practices of drug dealers.

Additionally, the omitted element (transportation for sale) was contested at trial. In fact, the focus of defense counsel's entire argument was that defendant was a drug user not a drug dealer. Defense counsel told the jury that "the reason that we are here is because the Prosecution is trying to make a man with .4 grams of cocaine for personal use into a felon and a drug dealer." Defense counsel described the prosecution's "theory of sales" as "very weak," and argued this was nothing more than a case of "simple possession." Defense pointed out that the police "never stopped Mr. Gross to see if Mr. Gross actually had drugs." Defense counsel further noted that the "two pea-sized doses," "at the most $50 worth," was "[o]bviously an amount that could be for personal use." Defense also highlighted the lack of indicia of sales in this case, to wit: no evidence of text messages suggesting drug transactions, scales, packaging materials, or weapons were found in defendant's possession. As for the $500 in defendant's sock, defense counsel argued to the jury that "there are people in different situations than we are, there are

8

people who can't afford or don't have access to a bank account, [and] people who [do not] trust the bank." Counsel added that in this type of situation, "you are going to keep your money in your sock if you are a man . . . [or] in your bra if you are a woman, but because somebody" is in a "different" situation "doesn't mean that they're a drug dealer. That doesn't mean that they are guilty of a crime or that the government has enough evidence to label them as a drug dealer."

In short, the evidence and inferences that may reasonably be drawn from the evidence discussed above do not prove defendant transported the cocaine base for purposes of sale so overwhelmingly that the jury could not have had a reasonable doubt on the matter. Consequently, we cannot conclude that the omitted element of transportation for sale resulted in an error that was harmless beyond a reasonable doubt. Accordingly, defendant's conviction for transportation of a controlled substance must be reversed and the case remanded to give the People the opportunity to prove beyond a reasonable doubt that defendant transported the cocaine base for sale. (See *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71-72, fn. 2 [statutory amendment retroactively adding additional element to offense allowed prosecution to establish additional element on remand without offending double jeopardy or ex post facto principles].) We shall remand the case for this purpose.

### III. DISPOSITION

The judgment is reversed as to the conviction for unlawfully transporting cocaine base. The matter is remanded to the trial court so that the People may decide whether to retry defendant for transporting cocaine base with the element that defendant was transporting the cocaine base for sale. If the People elect to retry defendant, the trial court shall proceed accordingly. If the People do not elect to retry defendant, the trial court shall vacate defendant's conviction for transporting cocaine base. The judgment regarding sentencing is also reversed and the matter is remanded for resentencing in accordance with this opinion. In all other respects, the judgment is affirmed.

9

_____
REARDON, J.

I concur:


_____
RIVERA, J.

Dissent in *People v Whigham* A139920

I respectfully dissent. I agree with the Attorney General that the evidence was overwhelming that appellant was engaged in the transportation of cocaine base for sale (Health & Saf. Code, § 11352). Accordingly, the error in failing to instruct the jury that the transportation had to be for sale and not for personal use was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.)
I dissent.

_____
RUVOLO, P. J.

A139920, *People v. Whigham*

1